IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

JAMES ALLEN GUEST                                            PLAINTIFF

V.                                  NO. 09-6078

MICHAEL J. ASTRUE,
Commissioner of Social security                           DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, James Allen Guest, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) under Title II of the Social Security Act (the Act) and Supplemental Security Income (SSI) under Title XVI of the Act. In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. §405(g).

**Procedural Background**

Plaintiff filed his applications for DIB and SSI on June 20, 2007 (Tr. 92-95, 96-98), alleging disability since January 1, 2007.[1] (Tr. 96). Plaintiff's applications were denied initially

---

[1] The ALJ noted that a certified earnings record for Plaintiff showed that he earned $4,382.47 during 2007, but that the work activity did not rise to the level of substantial gainful activity for 2007. (Tr. 11).

and upon reconsideration. (Tr. 50-51, 54-60). Pursuant to Plaintiff's request, a hearing was held before an Administrative Law Judge (ALJ) on February 12, 2009, where Plaintiff and a Vocational Expert (VE) testified. (Tr. 23-49). On May 13, 2009, the ALJ entered his decision, denying Plaintiff's request for a determination of disability. (Tr. 6-21) . The ALJ found that Plaintiff had the following severe impairments: hypertension; lumbar degenerative disk disease; chronic obstructive pulmonary disease (COPD); osteoarthritis of his hands and knees; obesity; and adjustment disorder with depressed mood. (Tr. 11). However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments, and after careful consideration of the entire record, found that Plaintiff had the residual functional capacity (RFC) to perform light work, with certain limitations. (Tr. 13). More specifically, the ALJ found that Plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds; stand/walk 6 hours out of an 8 hour workday; and sit for 6 hours out of an 8 hour workday. (Tr. 13). He also found that Plaintiff would not be able to work around more than normal pulmonary irritants and he would be limited to unskilled work, in that interpersonal contact would be incidental to work performed, tasks no more complex than those learned and performed by rote with few variables and little judgment, and that he would require simple, direct and concrete supervision. (Tr. 13). Plaintiff's request for review was denied by the Appeals Council on July 31, 2009, and the decision of the ALJ therefore became the final decision of the Commissioner. (Tr. 1-4).

**Evidence Presented**

Plaintiff was born in 1959 and completed the 10th grade in school. (Tr. 26, 132). On August 23, 2007, Plaintiff was measured as 5'11" tall and weighed 267 pounds. (Tr. 124). From

1979-1986, Plaintiff did body, fender and paintwork at an auto body shop; from 1988 to 1995, he was a cook at a restaurant; and from 2003 to 2006, he did scrapping and paper clean up work at a construction/sheetrock company. (Tr. 110).

The earliest medical record in this matter is dated December 4, 2006, when Plaintiff saw his treating physician, Dr. Paul Gardial, at Heritage Physician's Group (HPG), complaining of knee and leg pain. He was diagnosed with hypertension (the record reveals he had been off medication for 3 weeks); ED; and osteoarthritis in the knees. (Tr. 184). He presented again to HPG on December 26, 2006, complaining that he fell the day before while carrying boxes down the stairs. (Tr. 183). He was diagnosed with lumbar strain and hypertension. (Tr. 183). Plaintiff presented himself to HPG on March 2, 2007, complaining of back pain, and was diagnosed with back pain, hypertension and insomnia. (Tr. 182). On June 6, 2007, he was diagnosed with COPD, bronchitis, osteoarthritis in the knees and hands, insomnia, and a cold sore. (Tr. 181).

On July 10, 2007, a Mental Diagnostic Evaluation was conducted by Dr. Janet E. L'Abbe. (Tr. 187-194). During that evaluation, Plaintiff denied any plan for suicide, but noted that he frequently had difficulty coping with his severe pain. Dr. L'Abbe stated that Plaintiff did exhibit frequent pain behaviors, and diagnosed Plaintiff as follows:

> Axis I - Adjustment Disorder with Depressed Mood
>     Polysubstance Abuse with Sustained Full Remission
> Axis II - Learning Disorder by History
> Axis V - GAF - 55-65.

(Tr. 192). She further reported that Plaintiff appeared to have the cognitive ability to cope with basic, work like tasks; that he was likely to be able to attend and sustain concentration; and was

-3-

likely to have difficulties sustaining persistence in completing tasks and doing them within an acceptable time-frame, due to his sleep deprivation. (Tr. 193).

On August 16, 2007, a Psychiatric Review Technique was prepared by Dan Donahue. (Tr. 195-208). Dr. Donahue found that Plaintiff had a moderate degree of limitation in: restriction of activities of daily living; difficulties in maintaining social functioning; difficulties in maintaining concentration, persistence or pace, and had one or two episodes of decompensation, each of extended duration. (Tr. 205). He described Plaintiff as a 47 year-old male alleging physical problems as well as learning problems, memory problems, and depression. Dr. Donahue diagnosed Plaintiff with: Adjustment Disorder with Depressed Mood; Learning Disorder, by History, and GAF - 55-65, unskilled. (Tr. 207). Dr. Donahue also prepared a Mental Residual Functional Capacity (RFC) Assessment dated August 16, 2007. (Tr. 209-212). He found that Plaintiff was not significantly limited in 11 out of 20 categories and was moderately limited in 9 out of 20 categories. (Tr. 211).

On August 23, 2007, Dr. Jack Somers conducted a physical examination of Plaintiff. (Tr. 216-222). He noted Plaintiff's medications at that time as Advair, blood pressure medicine, and a pain pill. (Tr. 216). The range of motion of Plaintiff's spine and extremities were all within normal range, and his limb function was normal. (Tr. 219-222). His disc spaces in his lumbar spine were well maintained and no bony abnormalities were noted. (Tr. 221). He was found to have mild thumb MCP (metacarpophalangeal) joint, degenerative joint disease in his right hand, with no other abnormalities, and the joint space in his right knee was well maintained, with minor sclerotic changes of joint. (Tr. 221). Dr. Somers diagnosed Plaintiff with: History of low back pain with radicular SC; DOE (dyspnea on exertion) etiology unknown; decreased vision;

and polyarthralgias secondary to degenerative joint disease. (Tr. 222).

On April 7, 2009, Dr. Ross P. Hardy, an orthopedic specialist at Orthopaedic Associates of Arkansas, wrote a letter to Dr. Joseph R. Gardial,[2] who had referred Plaintiff to Dr. Hardy. In the letter, Dr. Hardy indicated that Plaintiff's x-rays revealed lumbar degenerative disk disease. X-rays revealed that the lower lumbar spine was straight with a normal lordotic curve. There was evidence of degenerative disk disease, but no spondylolisthesis and obvious fractures were identified. (Tr. 238). Dr. Hardy further reported that Plaintiff had a moderate leg length discrepancy, which might have been contributing to his pain and his left achilles reflex. He stated that Plaintiff did have some myofascial pain in the low back musculature and that the decreased reflex might suggest S1 radiculopathy on the left side. (Tr. 233). Dr. Hardy encouraged Plaintiff to discontinue smoking and they discussed the adverse effects of nicotine in regard to accelerated degenerative disk disease. (Tr. 233). Dr. Hardy found Plaintiff's gait to be moderately antalgic. (Tr. 237). Dr. Hardy also placed a 5 mm. heel lift in Plaintiff's left shoe. Dr. Hardy noted that Plaintiff's medications were Mobic, Lisinopril, and Symbicort Inhaler. (Tr. 236). Plaintiff was also taking Tramadol, which reportedly did not help much. (Tr. 236). Dr. Hardy's impression was: possible S1 radiculopathy on the left; chronic low back pain; and degenerative disk disease. (Tr. 237). The plan was for Plaintiff to stop smoking and lose weight. (Tr. 237).

A field office disability report dated June 20, 2007, indicated that in a face-to-face interview with Plaintiff, Plaintiff had difficulty reading, understanding, sitting, standing and

---

[2]According to Plaintiff, Dr. Paul Gardial left and went to Texarkana and his father, Dr. Joseph R. Gardial, took over Plaintiff's care.

walking. (Tr. 122). It was noted that during the interview, Plaintiff had some difficulty walking and stood up some during the interview because he said he was in some pain. He also coughed quite a bit during the interview.

In an undated disability report, Plaintiff stated that the illnesses that limited his ability to work were lung problems, arthritis in his legs and hands, heart problems, and high blood pressure. (Tr. 125). Plaintiff reported that he was injured on the job when he was working for a cabinet company in 1978. He was admitted to a hospital in Mesquite, Texas and received shock therapy on his back. (Tr. 133). In a July 1, 2007 disability report, Plaintiff reported that he was taking Trazodone, Meloxicam, and Lisinopril and that his abilities were very limited because of his pain. (Tr. 136).

With respect to Plaintiff's daily activities, he reported that he got up and watched television, drank coffee, took a nap, woke up, sat outside on the porch for a while, watched more television while eating a sandwich, took a nap, ate dinner, watched television, and went to bed. (Tr. 146). He prepared quick foods and did no yard work. He went outside daily, drove a car and sometimes helped his wife shopping. (Tr. 148-150). He further reported that he went to church when he was able, and watched his children when they were out of school, although they were old enough to take care of themselves. (Tr. 146).

At the hearing held on February 12, 2009, Plaintiff stated that Dr. Paul Gardial told him he had emphysema and that chemicals from painting cars had collected in his lungs, making it hard for him to breathe. (Tr. 27). He stated that he could not sit or stand too long because of the pain. (Tr. 29). He stated that he was still taking Sinopril, an inhaler, Lisinopril for blood pressure, Symbicort, Tramadol, and Meloxicam. (Tr. 32). He stated that he had not been back

to see any of the doctors in a while because he did not have money to go see them and had no insurance. (Tr. 33). He stated that Tramadol eased the pain but did not take it away, and that his inhaler helped his lungs for a little while. (Tr. 33). He testified that Dr. Paul Gardial and the "state" said he needed to be put on oxygen at night so he could sleep, but that he could not afford the oxygen. (Tr. 34). He was able to drive and pick his children up and take them to the doctor or to play games if they needed to go, and stated that all of his boys did the housecleaning, laundry, swept, vacuumed and did the dishes. (Tr. 34). He stated that he smoked two packs of cigarettes per day, although he had been smoking four packs per day. (Tr. 40). He also stated that the cigarettes cost him $2 a pack, but that it looked like they were going up and that he was going "to really have to try to quit." (Tr. 40).

**Applicable Law**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the

ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and, (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity (RFC). See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

**Discussion**

The Eighth Circuit has consistently held that the ALJ must "fully and fairly develop the

AO72A
(Rev. 8/82)

record so that a just determination of disability may be made." Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995). This can be done by re-contacting medical sources and by ordering additional consultative examinations, if necessary. See 20 C.F.R. § 404.1512. This responsibility is independent of Plaintiff's burden to press his case. Vossen v. Astrue, No. 09-1985, 2010 WL 2790934, at *4 (8th Cir., July 16, 2010)(the Eighth Circuit Court of Appeals remanded the matter for further development of claimant's RFC and the authenticity of the treating physician's report where the ALJ questioned the authenticity of the data and observations of a treating physician's assessment, and instead relied upon an assessment of a non-treating, non-examining physician) quoting from Snead v. Barnhart, 360 F.3d 834, 838 (8th Cir. 2004). The Court believes that in the present case, the ALJ failed to fully and fairly develop the record.

The Court is particularly concerned with the fact that no physical RFC assessment was obtained by the ALJ in this case. A claimant's RFC is a medical question, and the ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace. Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2007)(noting that the regulations provide that treating physicians or psychologists will be recontacted by the Commissioner when the medical evidence received from them is inadequate to determine a claimant's disability).

On August 23, 2007, Plaintiff underwent a general physical examination with Dr. Jack Somers. Dr. Somers noted a history of low back and leg pain, secondary to degenerative disk disease, DOE(dyspnea on exertion) at 75 yards, and decreased vision. Dr. Somers was not asked to complete a physical RFC assessment, and failed to answer the question in the examination

-9-

report as to whether there were any limitations in Plaintiff's ability to walk, stand, sit, lift, carry, handle, finger, see, hear or speak, and the extent of those limitations.

On April 7, 2009, Dr. Hardy, the orthopedist, assessed Plaintiff with possible S1 radiculopathy and chronic low back pain. No physical RFC assessment was completed by Dr. Hardy. There is therefore no medical evidence in the record which would indicate the extent of Plaintiff's physical limitations, such as the amount of weight Plaintiff would be able to lift or carry. Instead, in Plaintiff's function report dated July 1, 2007, Plaintiff stated that he could "probably lift a 10 lb. bag of potatoes but it hurts my hands" and the ALJ instead found that Plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds.

Since Plaintiff's degenerative disk disease, osteoarthritis of his hands and knees, and chronic low back pain could significantly impact Plaintiff's ability to perform work-related activities, the Court believes the ALJ should have obtained a physical RFC assessment from Dr. Hardy and Dr. Joseph R. Gardial. Since this was not done, the Court does not find substantial evidence to support the ALJ's RFC assessment. Remand is necessary to allow the ALJ to obtain Physical RFC Assessments from Dr. Hardy and Dr. Gardial, or from another consultative orthopedic physician, if necessary to develop the record further.

## Conclusion

Based upon the foregoing, having carefully reviewed the record, the undersigned recommends that this matter be reversed and remanded, pursuant to sentence four of 42 U.S.C. §405(g), directing the ALJ to obtain Physical RFC Assessments from Dr. Hardy and Dr. Gardial or another orthopedic physician, if necessary.

**The parties have fourteen days from receipt of our report and recommendation in**

AO72A
(Rev. 8/82)

**which to file written objections pursuant to 28 U.S.C. 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

Entered this 4th day of August, 2010.

*/s/ Erin L. Setser*
HONORABLE ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)